DEVEREUX v. McCRADY.

1. EVIDENCE—EXECUTOR.—An executor is a competent witness, under section 400 of the Code, as to a conversation had with his testator against the interest of the testator, if such witness has no individual interest in the thing in controversy.

2. NONSUIT.—It is error to dismiss a complaint when the allegations thereof and the testimony show that the plaintiff is entitled to some relief.

3. PLEADING—DEMURRER.—Demurrer is the proper pleading to raise the question of the sufficiency of the allegations of the complaint to entitle the plaintiff to equitable relief by way of accounting.

4. PRACTICE—ACCOUNTING—EQUITY.—The rule indicated as to when legal remedies are inadequate, and a suit in equity for an accounting proper.

5. EQUITY—ACCOUNTING.—In this case the complexity of the account is such that the plaintiff cannot have adequate relief at law, but has the right to invoke the jurisdiction of the Court of Equity.

MR. CHIEF JUSTICE McIVER, *dissenting*.

Before BUCHANAN, J., Charleston, August 26, 1895. Reversed.

Action by John H. Devereux against Edward McCrady and Thos. McGahan, as executors and trustees under the will of Wm. McBurney, for injunction and accounting, commenced April 16, 1894. All issues were referred to Master Sass, who, upon close of plaintiff's testimony, made the following order:

The plaintiff having closed his testimony, and defendants thereupon having moved to dismiss the complaint upon the testimony taken, on hearing counsel and consideration thereof: It is is ordered, that the motion be refused, the court being of the opinion that the evidence presents a case for the jurisdiction of the court on an application for an accounting. Nothing herein, however, to be construed as in any way passing upon the effect of the statute of limitations in this cause, or as precluding the interposing of the same as to any claim presented.

From this order the defendants appealed, and were sustained by the Circuit Judge in the following order:

This case comes up from the order of the master refusing to dismiss the bill and to deny an accounting. Is the plaintiff upon the showing made entitled to an accounting? A Court of Equity cannot take cognizance of every action where there is an allegation of partial payments made and services rendered. Here the proper jurisdictional grounds

do not appear. I think the master erred. The appeal is sustained and the order reversed. The motion below should have prevailed and the bill dismissed for the showing made.

The plaintiff appeals upon the following exceptions:

1. Because his honor erred in sustaining the exceptions to the master's order refusing to dismiss the complaint.

2. Because his honor erred in dismissing the complaint herein.

3. Because his honor erred in holding that the proper jurisdictional grounds did not appear herein for an action of accounting.

4. Because his honor should have held that the evidence showed that there was a long and complicated account to be examined on both sides.

5. Because his honor should have held that the taking of a long and complicated account was necessary for the information of the court before judgment.

6. Because his honor should have held that the evidence showed there were mutual accounts between the parties, which were continuous, running, unadjusted accounts for many years.

7. Because his honor should have held that the evidence showed circumstances of too great complication and difficulty to allow of adequate relief at law.

8. Because his honor should have held that the evidence discloses a proper case for an accounting between the parties and within the jurisdiction of a court of equity.

The defendants also move to sustain the decree, upon the following grounds:

I. Because the plaintiff, appellant, on the trial in the circuit, upon the preliminary question as to his right to an accounting, failed to establish by evidence that he has any interest, present or contingent, in the premises described as No. 29 Broad street.

II. Because the plaintiff, appellant, on said trial, failed to establish by evidence that the absolute deed from John

H. Devereux to William McBurney, dated in June, 1872, but recorded in November, 1881, was in fact but a mortgage.

III. Because the plaintiff, appellant, on said trial, failed to establish by evidence the claim of a mutual, open running account between himself and the defendants' testator.

IV. Because the plaintiff, appellant, on said trial, failed to establish that Thomas R. McGahan, the executor of William McBurney, and a party to the action (whom he, the plaintiff, examined on his behalf, against objection, under sec. 400 of the Code), had any *personal* interest in the event of the suit to be promoted or injured; and that said Thos. R. McGahan having, so far as the evidence discloses, no personal interest to be *promoted* or *injured*, and his testimony relating to and solely affecting the interests of the deceased, should not have been allowed by the master to testify against objection.

V. Because the great lapse of time sought to be carried by the accounting claimed—the death of one of the principals and the *laches* of the other, independent of the statute of limitations—was sufficient to bar the plaintiff from an accounting.

*Messrs. Mitchell & Smith*, for appellants.

*Messrs. T. W. Bacot* and *Louis DeB. McCrady*, contra.

March 11, 1896. The opinion of the court was delivered by

MR. JUSTICE GARY. William McBurney, a citizen of the city of Charleston, departed this life in December, 1893, leaving in full force and effect a last will, whereof he appointed Edward McCrady and Thomas R. McGahan executors. After his death, John H. Devereux, the appellant herein, filed a complaint against the executors of McBurney, for an injunction, accounting, and ascertainment of the balance outstanding between the estate of McBurney and the plaintiff, and for the return to plaintiff of certain securities held by McBurney.

The complaint sets out an alleged agreement, made in

1872, between the plaintiff and the defendants' testator, the late William McBurney, for the purchase of the premises No. 29 Broad street, in the city of Charleston, by which alleged agreement William McBurney was to pay the purchase money, and the plaintiff was to alter and improve the property at his expense. The plaintiff alleges that he carried out said agreement at great expense to himself. That for many years, to wit: since the year 1865, the relations between the plaintiff and Mr. McBurney had been very close and friendly; that, during all that period, the plaintiff was the only person who was employed by William McBurney to do his work upon the large real estate and property owned by McBurney in the city of Charleston. The fourth paragraph of the complaint alleges: "That, during the period aforesaid, the said William McBurney, from time to time, made this plaintiff payments on account; and also, from time to time, made him loans in money actually advanced, and also loans by endorsements on his notes; and, during the periods aforesaid, this plaintiff, himself, also at certain times, at the request and for the accommodation of the said William McBurney, made notes, payable to the order of the said William McBurney, or endorsed notes of the said William McBurney, payable to the plaintiff's order. That, during all the period aforesaid, and up to the death of the said William McBurney, no final settlement and adjustments of the several accounts between this plaintiff and the said William McBurney was ever had, but that the said William McBurney died without ever having settled and adjusted the same. That the accounts on each side during this whole period constituted one continuous runnning account, no balance ever having been struck or the account ever closed." That in 1881, being in straitened financial circumstances, and being indebted to William McBurney for loans and endorsements, the plaintiff, to secure said endorsements, executed and delivered to the said William McBurney a deed of conveyance to the premises No. 29 Broad street, but that said deed

of conveyance, though absolute on its face, was, neverthe-
less, intended as a mortgage. That the said William
McBurney was, at the time of his death, under a. full
accounting, if had with this plaintiff, indebted to him for
work, labor, services, and material, in an amount which he
could not exactly state without such accounting, but which,
on information and belief, he alleged to be about $2,500.

The·defendants answered the complaint, admitting the
purchase, in 1872, of the premises, No. 29 Broad street,
with McBurney's money; that the deed of conveyance
thereof was executed on the 6th of June, 1872, to John H.
Devereux, the plaintiff, by William McBurney and Alfred
Gillespie; and that in November, 1881, the plaintiff made
his deed of conveyance for· the said premises to the said
William McBurney, dating back to and executed and de-
livered as of the 6th of June, 1872. They also admitted
that the said William McBurney, from time to time, made
the plaintiff loans in money. actually advanced, and also
loans by endorsements on his (the plaintiff's) notes or other
paper. They denied the other allegations of the complaint,
and pleaded the statute of limitations.

Testimony was introduced to show that McBurney was a
close personal friend of the plaintiff, who was a contractor
and builder, and both of them resided in the city of Charles-
ton. That no one but the plaintiff had ever done any of
the work on McBurney's property in the city of Charleston,
and that, commencing with 1865, up to the death of Mc-
Burney, December, 1893, the plaintiff had, from time to
time, and continuously, done work upon this property.
That McBurney's estate held notes and obligations of the
plaintiff, and, in like manner, that the plaintiff held notes
endorsed by him for McBurney's àccommodation. Also,
notes paid by him to McBurney for a large amount running
over this period. That McBurney was the holder of a
mortgage on the property of the plaintiff, executed by the
plaintiff on the 26th of November, 1881, securing a bond
of Devereux's of that date, in the penalty of $11,000, con-

ditioned for the payment of $5,500. Thomas R. McGahan, one of the defendants aforesaid, testifying for the plaintiff, said: "Just prior to Mr. McBurney's death, he said something to me—talking about unsettled business that he had—with regard to one claim that, he said, as soon as he got up he was going to settle, and that was to have a settlement with Devereux; and, he added, that they had had no settlement since 1865. I think that was four or five days before he died. He spoke of it as wanting to have the account settled as soon as he was able to attend to anything. That was the only conversation I had with Mr. McBurney on the subject." Cross-examination by Mr. Bacot: "I am one of the executors of the will of Mr. McBurney. In this conversation with Mr. McBurney, shortly before his death, he did not say to me that he owed Mr. Devereux money, nor did he tell me that on any occasion." Q. "Did Mr. McBurney at any time say to you, and lead you to believe, that Mr. Devereux owed him money?" (Objected to by Mr. Smith.) A. "The only conversation we had on that subject was with reference to the protest of a note of $2,500 of John H. Devereux, on which he was endorser. In talking further on the subject, he stated that he held a mortgage on Devereux's property to secure endorsements up to $5,000, according to my recollection. I do not remember what time this was; it was several years ago." That in 1872 a deed of conveyance was made from William McBurney and Alfred Gillespie, acting for Hyatt, McBurney & Co., to John H. Devereux of the land and property on Broad street. About the same time, a deed of conveyance was made from William McBurney and Alfred Gillespie, for Hyatt, McBurney & Co., to John Devereux of certain premises on Hayne street, in the city of Charleston. On the same day that this property on Hayne street was conveyed to John H. Devereux, he immediately reconveyed the same back to McBurney; but the lot on Broad street remained in the name of John H. Devereux until the 26th of November, 1881, the same day that the mortgage of John H. Devereux

for $5,500 to McBurney was made, and was not recorded until that time. That the plaintiff had, or claimed, an interest in the property on Broad street, as joint owner, from 1872 until he executed what purports to be a deed of conveyance to McBurney in 1881, and that during that time McBurney received all the rents. The following papers were produced by the plaintiff and the defendants, and offered in evidence, to wit:

"Note, dated June 28th, 1872, for $230, payable to the order of Wm. McBurney, sixty days after date, signed by John H. Devereux; the next note, dated July 26, 1881, for $1,725, payable sixty days after date, to the order of Wm. McBurney, signed by John H. Devereux; the next note, dated July 18, 1882, for $1,725, payable to the order of Wm. McBurney, thirty days after date, signed John H. Devereux; the next note, dated August 7th, 1884, for $497, payable fifteen days after date, to the order of Wm. McBurney, signed John H. Devereux; the next note, dated July 30, 1884, for $547, payable five days after date, to the order of Wm. McBurney; the next note, dated April 27, 1884, for $300, payable twenty days after date, to the order of Wm. McBurney, signed John H. Devereux; the next note, dated March 7, 1885, for $312, payable fifteen days after date, to the order of Wm. McBurney, signed John H. Devereux; the next note, dated February 13, 1886, for $140, payable thirty days after date, to the order of Wm. McBurney, signed John H. Devereux; the next note, January 14, 1890, for $650, payable sixty days after date, to the order of Wm. McBurney, signed John H. Devereux."

Q. "Mr. Devereux, the nine notes which I have referred to and produced, and that I now hand to you, were paid by you at maturity?" A. "Yes, sir." Mr. Smith also produced check, dated December 18, 1890, on the First National Bank, for $200, payable to Mr. Wm. McBurney, signed John H. Devereux. Two notes, of which the following are copies, with endorsements thereon:

"$500.    Charleston, S. C., February 4th, 1890.    Fifteen

days after date, I promise to pay to the order of Wm. Mc-Burney, five hundred dollars, at So. Ca. Loan and Trust. Value received.    John H. Deveraux."

"Endorsed on face of note in Mr. McBurney's handwriting.    Paid by Mr. McBurney, having been discounted for his accommodation.    February 21, '90."

"$750.    Charleston, S. C., March 20th, 1890. · Thirty days after date, I promise to pay to the order of Wm. McBurney, seven hundred and fifty dollars, at S. C. Loan and Trust Company office.    Value received.    John H. Devereux."

"Endorsed on face of note in McBurney's handwriting. Paid by Wm. McBurney.    April 22, '90."

Also, the following notes: "A note for $382, dated April 15, '84, payable thirty days after date, to the order of Wm. McBurney, at the South Carolina Loan and Trust Co., signed John H. Devereux and endorsed by William McBurney.

"A note for $362, dated October 28, '84, payable thirty days after date, to the order of Wm. McBurney, at the South Carolina Loan and Trust Co., signed by John H. Devereux, and endorsed by Wm. McBurney.

"A note for $500, dated 28th of January, 1889, payable sixty days after date, to the order of Wm. McBurney, at the First National Bank of Charleston, signed by John H. Devereux, and endorsed by Wm. McBurney first, and by John H. Devereux second.

"A note for $400, dated 12th of March 1891, payable sixty days after date, to the order of Wm. McBurney, at the South Carolina Loan and Trust Co., signed by John H. Devereux and endorsed by Wm. McBurney.    Across the face of this note is the following endorsement, signed by John H. Devereux and in his handwriting: 'This note was discounted for the accommodation of Mr. McBurney, and was paid by him.' "

The following memorandum check, checks, due bills, and notes, signed by John H. Devereux, and found among the effects of Wm. McBurney, deceased, were offered in evidence:

"Mem. check, dated January 18, 1873, payable to Wm. McBurney, for $450; mem. check, dated January 28, 1873, payable to Wm. McBurney, for $400; promissory note, dated February 22, 1873, payable to Wm. McBurney, for $913.20; check, dated July 24, 1873, payable to Wm. McBurney, for $300, with receipt endorsed on same for $58; promissory note under seal, dated October 22, 1873, payable to Wm. McBurney, for $300; receipt for check and draft to be accounted for, dated November 1, 1873; check of Henry & Lewis on First National Bank for $196.02; acceptance by W. K. Ryan, payable 18–21 November, 1873, for $364.85; due bills, dated November 3, 1874, payable to Wm. McBurney, for $125; order on John S. Fairley & Co., dated September 9, 1878, payable to ———, for $22.50; check, dated October 24, 1878, payable to bearer, for $25; promissory note, dated February 21, 1881, payable to Wm. McBurney, for $400; promissory note, dated November 17, 1881, payable to Wm. McBurney, for $50.37; promissory note, dated November 23, 1881, payable to Wm. McBurney, for $120; promissory note, dated November 26, 1881, payable to Wm. McBurney, for $150; memorandum check, dated December 24, 1881, payable to Wm. McBurney, for $50; promissory note, dated August 19, 1882, payable to Wm. McBurney, for $1,725; check, dated November 25, 1882, payable to Wm. McBurney, for $245; check, dated January 2, 1883, payable to Wm. McBurney, for $302; check, dated January 20, 1883, payable to Wm. McBurney, for $242; check, dated December 12, 1883, payable to Wm. McBurney, for $130; promissory note, dated August 29, 1891, payable to Wm. McBurney, for $2,500."

At the close of plaintiff's testimony, the defendants moved to dismiss the complaint upon the *testimony* taken.

The order of the master, the decree of the Circuit Judge, the appellant's exceptions to said decree, and the additional grounds on which the respondents ask this court to sustain said decree, will be incorporated in the report of the case.

The question for consideration by this court is, whether

the Circuit Judge erred in sustaining the exceptions to the master's report and dismissing the complaint.

Objection was raised against the testimony of Mr. McGahan, under section 400 of the Code. It will be noticed that Mr. McGahan was not the only defendant in this action. Section 391 of the Code provides: "A party to an action may be examined as a witness, at the instance of the adverse party, or of any one of the several adverse parties, and for that purpose may be compelled, in the same manner, and subject to the same rules of examination, as any other witness, to testify either at the trial, or conditionally, or upon commission." Section 400 of the Code provides: "A party to an action or special proceeding in any or all courts * * * may be examined as a witness on his own behalf or in behalf of any other party conditionally, on commission, and upon the trial or hearing in the case, in the same manner and subject to the same rules of examination as any other witness: Provided, however, That no party to the action or proceeding, nor any person who has a legal or equitable interest which may be affected by the event of the action or proceeding, nor any person who, previous to such examination, has had such an interest, however the same may have been transferred to, or come to, the party to the action or proceeding, nor any assigner of anything in controversy of the action, shall be examined in regard to any transaction or communication between such witness and the person at the time of such examination deceased, as a witness against a party then prosecuting or defending the action as executor * * * when such an examination, or any judgment or determination in such action or proceeding, can in any manner affect the interest of such witness or the interest previously owned or represented by him. But when such executor * * * shall be examined on his own behalf in regard to such transaction or communication, or the testimony of such deceased * * * in regard to such transaction or communication (however the same may have been perpetu-

ated or made competent), shall be given in evidence on the trial or hearing in behalf of such executor   *   *   *   then all other persons not otherwise rendered incompetent shall be made competent witnesses in relation to such transaction or communication on said trial or hearing." It does not appear that Mr. McGahan has, or has had, any interest as an individual, which may be affected by the event of this action, but his interest is solely in a representative capacity. Furthermore, the testimony of Mr. McGahan was not even *in favor* of his interest in a representative capacity, but was *against* such interest. There is greater reason for allowing the testimony of one whose interest is simply as a representative than where the interest is in his individual right. But even where one who has an individual right, that may be affected by the event of the action, testified *against* his interest, such testimony is competent. *Shell* v. *Boyd*, 32 S. C., 359. The objection, therefore, to such testimony must be overruled.

Even if the Circuit Judge was correct in finding that the plaintiff was not entitled to *equitable* relief, by way of accounting, still there was error in dismissing the complaint, when the allegations of the complaint, and the testimony introduced to support such allegations, showed that the plaintiff was entitled to *some* relief. We are, however, of the opinion that the Circuit Judge was in error in deciding that the plaintiff was not entitled to an accounting. The defendants did not demur to the *complaint*, and, therefore, the question as to the sufficiency of the allegations of the complaint to entitle the plaintiff to *equitable* relief by way of accounting, is not before this court for consideration. The defendant's attorneys, in their argument before this court, say: "There are no allegations as to trust, no allegations as to complexity of accounts, and no prayer for discovery." However, the defendants did not demur to the complaint, as they might with propriety have done, but allowed the plaintiff to produce evidence as to his right to an accounting.

The plaintiff is, therefore, entitled to an accounting, if the *testimony* shows such right.    In the case of *Padwick* v. *Hurst*, 18th Beavan's Reports, 580–1, the court says:

4    "The next question is, whether this is a case in which the accounts are of so complicated a nature that they can only properly be taken in this court, and not in a court of law.    Now, I will consider, in the first place, the effect of the allegation that the accounts are of that complicated description.    It is admitted, that if it stood by itself, that would not be sufficient.    In the case of *Foley* v. *Hill*, there was an allegation that the items were numerous on each side, and could not be fairly adjusted except under the direction of a court of equity.    If, on the hearing, that allegation had been proved, jurisdiction would have been given to this court, and the plaintiff would have had relief in equity.    Of the accuracy of that there can be no question, because, when it is once established by evidence that the account is of a very complicated and intricate nature, then this court has jurisdiction.    But, upon demurrer, you cannot take that general allegation to be correct, unless it is supported by something showing the foundation upon which it is rested.    If this bill had not been demurred to, and the suit had proceeded to a hearing, and it had been then proved that the accounts were complicated and intricate, this court would, undoubtedly, have proceeded on the evidence and made a decree, and it would have been too late for the defendant to say that the bill was demurrable, because it contained a mere general charge of complicated accounts."

As this case has not been heard upon the merits, and as this court has reached the conclusion that it must be remanded for the purpose of having a trial of all the issues that properly arise in the case, we have deemed it best not to decide upon all the questions argued by the attorneys of the respective parties to the action, but to rest our conclusion on the ground that the circumstances show such complication that the plaintiff cannot have adequate relief at law.    Without stating all the different circumstances giving

rise to such complication in the accounting, one of the principal grounds is, that there is testimony showing that the mortgage referred to in the testimony of Thomas R. McGahan was executed by the plaintiff in favor of the defendants' testator, for the purpose of securing endorsements made by McBurney for the plaintiff. If all the matters hereinbefore mentioned are to be considered in the accounting, it is very apparent that the plaintiff could not have adequate relief on the law side of the court. The defendants, however, contend that the notes, checks, &c., offered in evidence have all been paid, and, therefore, cannot properly be considered by the court. Conceding that they have been paid, the facts show that the plaintiff has a long account for services, &c., commencing in 1865, and continuing till testator's death, in 1893; that defendants hold claims against the plaintiff, some of which may require the aid of the court in the exercise of its equitable powers to enforce their payment. We refer especially to the mortgage mentioned in Mr. McGahan's testimony, which, it was said, was executed to secure the testator for endorsements made by him for the plaintiff. Before the balance can be determined, for which the court should render judgment, it will be necessary even as to this mortgage to decide: 1. What was its consideration? And if it should be found that the consideration was to secure endorsements as aforesaid, then, 2. What endorsements were made? 3. For what sums, if any, is the plaintiff now liable by reason of said endorsements? 4. The amount now due under said mortgage?

A clear statement of the rule as to when a plaintiff is entitled to an accounting in equity is thus expressed by Mr. Pomeroy, in his work on Equity Jurisprudence, vol. 3, p. 472, sec. 1421, to wit: "The instances in which the legal remedies are held to be inadequate, and, therefore, a suit in equity for an accounting proper, are: (1) Where there are mutual accounts between the plaintiff and the defendant—that is, where each of the two parties has received and paid on the account of the other. (2) Where

the accounts are all on one side, but there are circumstances of great complication, or difficulties in the way of adequate relief at law. (3) Where a fiduciary relation exists between the parties, and the duty rests upon the defendant to render an account." In the case of *Kerr* v. *Steamboat Co.*, Cheves Eq., p. 194, Chancellor Harper says: "Though it may not be easy to define by a general rule the class of cases in which a bill will lie for an account, yet, I think, there can be no doubt with respect to the present one. That an equitable jurisdiction exists, in cases of complex and intricate accounts, between whatever parties, though an action might be maintained at law, and though no discovery be needed, the authorities have settled beyond question. Such is the conclusion of Justice Story, whose work was cited in argument. (1 Story Eq., 433, § 451. See, also, Mift. Pl., 96, and *O'Connor* v. *Spaight*, 1 Sch. & Lef., 309.) It is true that, in some cases, it is said that there must be a series of mutual demands—not merely demands on one side and payments on the other. Yet this is to be taken with some qualification, for, in the case of *The Corporation of Carlisle* v. *Wilson* (13 Ves., 276), though the demands were all on one side, and all of them admitted to be of a legal nature, yet the bill was held to lie. The question always is, whether there be an adequate remedy at law?" In the same case, Chancellor Johnstone uses this language: "Professor Story, in his Commentary on Equity Jurisprudence (1 Story, chap. 4, p. 93), tracing the concurrent jurisdiction of this court, assigns, as one of its sources, the inability of courts of law, in some instances, to give perfect relief; which occurs, says he, 'in all cases when a simple judgment for the plaintiff or for the defendant does not meet the full merits and exigencies of the case, but a variety of adjustments, limitations, and cross-claims are to be introduced and finally acted on, and a decree, meeting all the circumstances of the particular case between the very parties, is indispensable to complete distributive justice.'" In the case of *O'Connor* v. *Spaight*, 1 Schoale & LeFroy, 305, one

of the leading cases on this subject, Lord Redesdale says: "The ground on which I think this is a proper case for equity is, that the account has become so complicated that a court of law would be incompetent to examine it upon trial at *nisi prius*, with all necessary accuracy, and that it could only appear, from the result of the account, that the rent was not due. This is a principle on which courts of equity constantly act, by taking cognizance of matters of which, though cognizable at law, are yet so involved, with a complex account, that it cannot be properly taken at law, and, until the result of the account, the justice of the case cannot appear." In the case of *Kennington* v. *Houghton*, 2 Younge & Collyer, 620, the court says: "Of these cross-demands, there is a plurality on both sides. Unquestionably, also, on one side, whether tenable or not tenable, they are numerous. Whether all of the subjects of claim on either side could be included in any one action is at least doubtful. My present impression is, that, unless probably in the almost obsolete action of account, the probability is that they could not be on either side included in the action. I am also very much disposed to doubt whether all the demands on either side could be made the subject of set-off; but, however these points may be, and assuming, for the sake of argument, that the demands on either side could all be included in one action not merely of account, and that the counter-claims on the other side could be made the subject of set-off, still the action so constituted would be one which, in my judgment, could not, with convenience and accuracy, be thoroughly tried at *nisi prius*." Many other authorities could be cited to sustain this principle of equity jurisprudence.

The case must be remanded for the purpose of an accounting; and, as we heretofore stated, the court deems it best not to pass upon any other question in the case than that the complexity of the accounts is such that the plaintiff cannot have adequate relief at law, but has the right to invoke the jurisdiction of the Court of Equity.

It is the judgment of this court, that the judgment of the Circuit Court be reversed.

MR. CHIEF JUSTICE McIVER, *dissenting.* · I cannot concur in this opinion, because I do not think that the plaintiff, either by his complaint or his evidence, made such a case as would entitle a Court of Equity to take jurisdiction. Owing to the pressure of other official business, I cannot now spare the time necessary for any proper discussion of the case; and as I am unwilling to delay the filing of this opinion, I must content myself with this very brief statement of my position.