### PRICE v. MIDDLETON & RAVENEL.

1. PARTNERSHIP CONTRACT.—An agreement to contribute to a common business connections in foreign countries, which were valuable in building up that business, and to receive as compensation one-third of the net profits; a set of books to be kept open to inspection at all times; neither party to enter into a contract without the consent of the other, is a partnership agreement.

2. SUIT FOR DAMAGES FOR BREACH OF PARTNERSHIP CONTRACT—EQUITY.—Suit by one partner for share of profits as damages for breach of partnership contract, where it involves a long and intricate accounting by defendant of the accurate profits of a business for several years, in part before and in part after breach of partnership contract, all the funds and books being in possession of defendant, should be tried in equity. That the complaint states the damages for each business year in separate causes of action does not affect it.

Before DANTZLER, J., Charleston.   Reversed.

Action by Thomas M. Price against Middleton & Ravenel. From order placing case on Calendar 1 for trial, defendants appeal.

*Messrs. Wm. Henry Parker* and *Legare & Holman,* for appellant.   No argument furnished Reporter.

*Messrs. Mitchell & Smith,* contra, cite: *What cases are triable by jury?* 17 S. C., 542; Code of Proc., 274; 43 S. C., 303.   *Partner's remedy for breach of contract:* 22 Ency., 2 ed., 205; 168 U. S., 335; 10 N. Y., 489; 134 Mass., 505; 15 Ency. P. & P., 1005, 1028, 1045; 2 Lindley on Part., 4 ed., 1025; 2 Hill Ch., 19; 10 Allen, 141.   *Intention of parties in continuing the contract:* 22 Ency., 2 ed., 27, 28; 145 U. S., 611; 2 Strob., 473; 4 Rich., 309.

August 31, 1906.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   This appeal is only from an order of Hon. C. G. Dantzler, Circuit Judge, refusing a motion

made by the defendants to transfer the cause from Calendar 1 to Calendar 2, but it involves important questions as to the right of trial by jury and the equity jurisdiction of the Court of Common Pleas. The complaint thus states the contract, which is the basis of the suit, and its consideration:

"That heretofore, to wit: on the first day of April, 1896, the plaintiff was well informed, skilled and equipped in the manner of the conduct of the export cotton business in the city of Charleston. That, in addition thereto, through his associations with and employment by cotton exporters for years previous, the plaintiff was in the possession of the names and addresses, with business references to and connections with firms and persons concerned in the export cotton business in foreign countries, to wit: in Europe, the possession of which was a necessary and important element in the conduct of the said export cotton business.

"That on the said first day of April, 1896, the above named defendants, carrying on the business as copartners as aforesaid, desiring to enter into the cotton export business, made and entered into the following agreement and contract in writing with this plaintiff, which was duly accepted by him, as follows, to wit:

" 'Charleston, S. C., April 1, 1896.

" 'Thos. M. Price, Esq., Charleston, S. C.—Dear sir: In return for the assistance that you are to give us in building up an exporting business in cotton and naval stores, we agree to pay you in return one-third of the net profits arising from such business, including the profits arising from any ship brokerage business, or any other business done in connection with the exporting business, the said profits to be paid you at the end of each business year, such business year to start on the first day of April and end on the last day of March of each year. We also promise that we will not enter into any contracts in connection with this business without your consent, and that we will keep a separate set of books for this business, to which you will at all times have free access.

This promise to continue good as long as we use the connections given or acquired through you. Yours truly,

" 'Middleton & Ravenel.' "

In the statement of the first cause of action it is then alleged, "the said defendants together with the plaintiff entered into and carried on the export cotton business according to the terms of said contract and agreement," and an account of the business for the first year ending March the 31st, 1900, a balance of $2,000 is alleged to be due the plaintiff as his share of the profits.

As a second cause of action the plaintiff sets out the contract and alleges: "That, in pursuance of the said contract, the said defendants, together with the plaintiff, entered into and carried on the export cotton business together according to the terms of said contract and agreement until the 30th day of June, 1900, when the defendants refused any longer to carry on the same with the plaintiff, in spite of plaintiff's protest and requirement that the said defendants should perform said contract. That, notwithstanding said refusal, the defendants continued to carry on the export cotton business after said date and, as plaintiff is informed and believes, continues to use the connections given or acquired through the plaintiff. That plaintiff has performed all his part by him to be performed under said contract and agreement, but the defendants have failed to perform theirs and, while, as plaintiff is informed and believes, still using the connections given or acquired through the plaintiff, have refused to pay to plaintiff his share of the net profits as required in said contract and agreement. That plaintiff is informed and believes and so alleges and charges on information and belief that the net profits for the year ending 31st March, 1901, were $15,000."

Then follows causes of action third, fourth, fifth and sixth, for the years 1901-02, 1902-03, 1903-04, 1904-05, respectively, identical with the second cause of action, except as to the profit for each year covered by said causes of action, which on information and belief. is alleged at $21,000.

The prayer is for judgment for the aggregate sum of $36,300.33, with interest on plaintiff's alleged share of the profits for each year from the close of the year for which they accrued.

The defendants' view is that under the contract set out in the complaint, plaintiff was a copartner with them, and though there are in form several causes of action for separate and specific sums of money as the plaintiff's share of profits, yet having regard to the substance the suit contemplates and, for its just determination, requires the taking of the accounts of a partnership running over a number of years to ascertain the share of one of the partners, and, therefore, the Court of Equity has exclusive jurisdiction. The plaintiff maintains he was merely an employee of the defendants and not a partner; but whether partner or employee, the action is nevertheless on the law side of the Court for breach of the contract either of employment or partnership, the profits being referred to only as the measure of damages for the breach; and that, therefore, he is entitled to a jury trial.

We consider first the legal relation of the plaintiff to the defendants—whether he was a mere employee or a copartner. It is said by Mr. Justice Gray, in *Meehan* v. *Valentine,* 145 U. S., 611, 620: "In the present state of the law upon this subject, it may, perhaps, be doubted whether any more precise general rule can be laid down than, as indicated in the beginning of this opinion, that those persons are partners, who contribute either property or money to carry on a joint business for their common benefit, and who own and share the profits thereof in certain proportions." This definition accords with the views expressed in the recent cases of *Providence Machine Co.* v. *Browning,* 68 S. C., 9, 46 S. E., 550; 72 S. C., 427; *Spool Cotton Co.* v. *King,* 68 S. C., 198, 46 S. E., 145, and other cases of partnership. Participation in profits alone does not determine the question, for one may contract to serve another for a compensation to be measured by the profits, and yet own no part of the profits themselves as his own specific property. Nor is the question

determined by the fact that there is community of interest and that each party is a principal with authority to act as agent for all the ohers concerned, nor by the lack of such authority; for there may be common ownership of property and a power of attorney to each owner from the others to sell and divide the proceeds, but this would confer no right on each to bind the others as partners or to do anything beyond the express authority conferred; and, on the other hand, a valid contract of partnership may be made stipulating that one of the partners would have the management of the business to the exclusion of all the others, and the stipulation would be good between the parties.

Between the parties themselves the intention, as in all other contracts, is controlling, and if the contract does not expressly provide for a partnership, and it indicates an intention not to confer a particular right or not to impose a particular obligation usually recognized as an inherent quality of the partnership relation, that relation will be held not to exist. For example, while the sharing of profits is presumptive evidence of a partnership, yet it is universally held that one who contracts to serve another for a compensation to be measured by the profits, but without power in the conduct of the business and without interest in the profits as a joint owner thereof is not a partner. On the other hand, when the contract provides for all the incidents of partnership, contribution to the common property, sharing of profits, mutual agency in the conduct of the business, it will be held to create a partnership though there is no expressed intention to that effect, and the parties may have had no intention of incurring the liabilities of partners; and if the contract leaves any doubt on these points from omission or otherwise, the doubt may be solved and the intention gathered from the course of dealing of the parties with each other and with the public.

A particular review of the many cases on this subject would not be profitable, for each case depends largely on its peculiar facts. Indeed, the general principles we have stated seem obvious enough to make reference to the authori-

ties unnecessary, but it may be well to cite some of them.
*Pierson* v. *Steinmyer,* 4 Rich., 309; *Bartlett* v. *Jones,* 2
Strob., 471; *Berthol* v. *Goldsmith,* 24 Howard, 536; *Meehan*
v. *Valentine,* 145 U. S., 611; 36 Lawyers' ed., 835, note; 30
Am. St. Rep., 828, note; 22 Am. and Eng. Ency., 22-34;
note to *Cox* v. *Hickman* and other cases, 19 Eng. Ruling
Cases, 402.

We are not now concerned with the difference in the de-
gree of proof necessary to establish partnership liability to
creditors, and the actual existence of a partnership as among
the parties themselves.   When one is actually a partner he
is liable as such to creditors without respect to whether the
credit was extended on the faith of his liability; but he is
also liable to creditors as a partner, though not one in fact,
if he has held himself out as one or allowed others to do so,
on the principle that he is estopped from denying his liability
to those who have acted in reliance on the character he has
voluntarily assumed.   But the controversy here is between
the parties themselves, and the inquiry is not whether they
are liable to third persons as partners but whether they are
in fact partners.

Having in view the general principles to which we have
adverted the conclusion cannot be avoided that the plaintiff
and defendants were partners.   Under the express language
of the contract and as a consideration of it the plaintiff
agreed to contribute to the common business, as an asset,
connections in Europe which were valuable in the exporting
of cotton for profit, which was the commercial enterprise
undertaken; and he was to share in the net profits.   The
word partnership it is true is not used, in the contract itself,
and there is no expression clearly showing that the plaintiff
was to exercise the usual powers of a partner to act for all
in the common enterprise; the language used by the defend-
ants in their letter to plaintiff which embodies the contract
being: "In return for the assistance you are to give us in
building up an export business in cotton and naval stores,
we also promise that we will not enter into any contracts

in connection with this business without your consent, and that we will keep a separate set of books for this business, to which you will at all times have free access."

But any doubt as to the meaning of these expressions and the intention of the parties is set at rest by their course of conduct set out by the plaintiff himself in the following allegation: "That in pursuance of the said contract, the said defendants, together with the plaintiff, entered into and carried on the export cotton business according to the terms of said contract and agreement." There is in this no implication that one party exercised more authority than another. On the contrary, it seems clear the plaintiff means to say he and the defendants prosecuted the business together, each recognized as having legal authority to act for all in the promotion of the common business.

The finding, however, that this is a suit by one partner against another, as has been forcibly argued by respondent's counsel, does not carry the conclusion that this is necessarily a cause cognizable exclusively by the Court of Equity.

It is said in *Karrick* v. *Hannaman,* 168 U. S., 328, 335: "No partnership can efficiently and beneficially carry on its business without the mutual confidence and co-operation of all the partners. Even when, by the partnership articles, they have covenanted with each other that the partnership shall continue for a certain period, the partnership may be dissolved at any time, at the will of any partner, so far as to put an end to the partnership relation and to the authority of each partner to act for all; but rendering the partner who breaks his covenant liable to an action at law for damages, as in other cases of breaches of contract." To the same effect is *Bagley* v. *Smith,* 61 Am. Dec., 756 (N. Y.). These cases are relied on by respondent as fully sustaining the view of the Circuit Judge. We should not be disposed to question the general proposition even if it were not supported by such high authority, that there are cases where a court of law may entertain an action brought

by one partner against another for damages for breach of his contract to maintain the partnership where the items going to indicate profits which are to constitute the measure of damages are few and simple.    But we have been able to find no case in which a court of law has undertaken to adjust partnership affairs, arising either before or after dissolution, where it was necessary for the jury to take a strict accounting covering a long period and many transactions.    In *Karrick* v. *Hannaman,* the accounts were referred by consent to a referee and the right to have a jury pass on them did not arise.    In *Bagley* v. *Smith,* the action was for damages for expulsion from a partnership.    It was held that future profits to be anticipated at the time of expulsion should be considered in estimating the damages, and that evidence as to past profits was admissible as bearing on future profits; but there seems to have been no dispute as to the amount of the past profits and hence no necessity to take an accurate accounting.    In this case, on the contrary, the plaintiff measures his damages by the exact future profits actually made, and these can only be ascertained by an accounting. In *Kinloch* v. *Hamlin,* 2 Hill's Ch., 19, our Court went to the extent of holding that where the claim of one partner against another in the circumstances could not be justly extended to include anything beyond "fifty cents per cord for one-half of the wood consumed" in the manufacture of brick, he was limited to an action at law and could not maintain a bill for account.    The Court, however, distinguishes the case by the use of the language we have italicized in the following quotation from the opinion : "It is not every agreement that constitutes a partnership, which, when broken, entitles the party injured to compensation or relief in equity. *It is only for an account or settlement on dissolution that the aid of that Court is necessary; and this, not merely on the ground that they are partners, but because of the trust and confidence reposed, and the necessity of a discovery.*    But a court of law is generally competent to give adequate relief in cases of the breach of particular stipulations; it cannot

enforce specifically, but can compensate in damages.   Partners may sue each other at law for the breach of any distinct and positive engagement contained in their agreement, as to account annually, or to adjust and to make a final settlement of the joint concerns on dissolution; then, a breach by one will vest a right of action which may be enforced at law upon the covenant, and adequate damages recovered.   Gow on Part., 106, 107, 2 T. R., 483, and in note, 'and the same rule applies to every other species of lawful covenant, by which partners reciprocally and severally bind themselves, *inter se,* to the performance of any particular act or thing.' "   The Court, in *Course* v. *Prince,* 1 Mill. Con., 416 (12 Am. Dec., 649), refused to entertain an action at law of one partner against another involving a partnership adjustment because the accounts had not been stated and a promise made to pay the balance.   The case of *Kerr* v. *Steamboat Co.,* Cheves Eq., 194, though not involving the right of partners, throws much light on the subject.   Chancellor Harper there says it is impossible to draw with precision the line of jurisdiction between the courts of law and equity, but the question always depends on whether there is an adequate remedy at law. The Court holds further, that whenever the relation of agency or other trust exists and an accounting is necessary to determine the rights of the parties, the Court of Equity has jurisdiction, and this jurisdiction may be invoked by either party.

It is argued, however, that when the partnership was dissolved by the wrongful expulsion of the plaintiff from the business, the partnership relation being at an end, there was thenceforth no agency or trust of any kind between the parties, and therefore no ground for the intervention of equity. The argument is not convincing.  Equity, it is true, cannot take jurisdiction of an ordinary action at law on an ordinary account, merely because the trial will involve many items. *Smith* v. *Bryce,* 17 S. C., 544.   But this cannot be regarded an ordinary action at law on account, as, for instance, an action by a merchant on a single account against his cus-

8—75

tomer, for there the charges and credits may be readily established by simple proof of the books or, at most, of the items by one or two persons, and the subtraction of one from the other establishes the balance. Here the rights of the parties can only be determined by an accounting of the entire export business, probably involving many transactions in foreign countries and possibly requiring evidence from those countries; and even when the books are proved and the correctness of the items established, intricate computations and statements will be requisite to ascertain the balance of profit for each year. No argument is necessary to show that the performance of such a task could not be expected from a jury with the opportunity which an ordinary trial affords. To require that it be attempted would not only make a just judgment extremely improbable, but would tend to bring trial by jury into disrepute.

Again, while it is true that the plaintiff's demand in four of his alleged causes of action is for the profits of four separate years accruing entirely after his alleged expulsion from the business, the claims for the years from March 31st, 1899, to March 31st, 1900, made in the first cause of action, and for three months of the second year from March 31st, 1900, to March 31st, 1901, made in the second cause of action, are for profits which accrued during the existence of the partnership or other trust relation, and involve an investigation into a simple breach of contract but of the entire partnership affairs for that period. As to this period of the continuance of the trust relation the case stands just as if any other trustee had undertaken to throw off the trust; the *cestui que trust* could not in such case sue at law for a specific sum, alleging that to be the amount due, and thus deprive the trustee of his right to account in equity for the administration of the trust.

It is to be considered, too, that the law regards the partnership dissolved by the expulsion of one member, only because it is impossible to force the parties to continue in a relation implying so much confidence. And on this principle the ac-

tion of the plaintiff, when the substance is considered, rests on the assertion that even for the years the busines was conducted after his expulsion, the plaintiff had the same right to demand his share of the profits as if he had continued in the business. To ascertain these profits an accounting cannot be less necessary or difficult than it would be if the partnership had continued, and it cannot be allowed that though the whole partnership business must be gone into, the tribunal best fitted for the task must lose its jurisdiction, to the detriment, not only, of the parties, but of the public, because by the wrongful act of one of the parties their technical relationship has been changed.

In *Taff Vale Ry. Co.* v. *Nixon*, 1 H. L. C., 111, 1 Eng. Ruling Cases, 406, the jurisdiction of the Court of Chancery was asserted on the sole ground that the account was so complicated that a just result could not be expected from a trial at *nisi prius*. The Lord Chancellor, after remarking, "that each case must be decided according to the peculiar circumstances that belong to it," says: "It is, therefore, nothing to the purpose to show that there are cases where the Court will not entertain jurisdiction, because it is a matter of law. Each case must be investigated, in order to see whether it comes within the rule laid down as that upon which a Court of Equity exercises its jurisdiction." In *Devereux* v. *McCrady*, 46 S. C., 146, 24 S. E., 77, this Court quoted with approval the following from Pomeroy's Equity Jurisprudence: "The instances in which the legal remedies are held to be inadequate, and, therefore, a suit in equity for an accounting proper, are: (1) Where there are mutual accounts between the plaintiff and the defendant—that is, where each of the two parties has received and paid on the account of the other. (2) Where the accounts are all on one side, but there are circumstances of great complication, or difficulties in the way of adequate relief at law. (3) Where a fiduciary relation exists between the parties, and the duty rests upon the defendant to render an account." Though the facts of

that case were different, the general principles laid down are applicable and controlling here. (See, also, 1 Cyc., 423.)

Not only will a complicated accounting be necessary to determine the rights of the parties, but this accounting must be by the defendants, who were copartners with the plaintiff, or at least trustees for a portion of the time, and who for the remainder of the time are liable to account and with the same right to do so as if the relation of trust had never ended.

This Court will rarely disturb the conclusion of the Circuit Judge on such a matter, but it seems to us very clear that the cause should be tried on the equity calendar.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.