## 10251

### SMITH v. UNION CENTRAL LIFE INS. CO.

#### (99 S. E. 830.)

JURY—RIGHT TO JURY TRIAL—ACCOUNTING.—Where the complaint to recover the balance due to a life insurance agent, under a contract, which entrusted him with collection of money for the principal so as to create a fiduciary relationship, and the itemized statement embraced 134 items relating to numerous transactions, either party was entitled to equitable accounting, and plaintiff could not demand a jury trial as a matter of right.

Before W. P. GREENE, special Judge, Spartanburg, Spring term, 1918. Reversed.

Action by Wade Smith against the Union Central Life Insurance Company. From a ruling of the trial Judge that plaintiff was entitled to trial by jury, the defendant appeals.

The following is the contract referred to in the opinion:

The terms of this contract to be strictly confidential.

This agreement, made this 15th day of March, 1906, between E. D. Byers, General Agent of the Union Central Life Insurance Company, of Cincinnati, Ohio, party of the first part, and Wade Smith, of Spartanburg, in the State of S. C., party of the second part.

Witnesseth, That the said party of the first part doth hereby appoint the said Wade Smith agent in the territory following: In S. C., when not in conflict with territory assigned exclusively to any agent, but such territory is not assigned exclusively to him.

That it shall be the duty of the said party of the second part to solicit and procure persons to be insured with the said company, and to collect and pay over premiums to the said party of the first part, for such insurance when effected.

This appointment is on the following conditions, which are agreed to by the parties hereto:

First. Said party of the second part agrees to thoroughly canvass the territory hereby assigned to him, and should

he fail to organize the territory within reasonable time, such portions of it as are unorganized or from which he fails to secure a reasonable amount of business shall be relinquished to said party of the first part.

Second. Said party of the second part shall solicit applications exclusively for the Union Central Life Insurance Company, and shall devote his partial time to the business of said agency. He shall be governed strictly by the rules and regulations of said company, as set forth in the Rate Book and Agents' Manual, and also by the instructions which he may from time to time receive from said company or from said party of the first part.

Third. The said party of the second part shall keep regular and accurate records of all transactions for account of said party of the first part and shall on the 1st day of each month, or oftener, if required, transmit to said party of the first part a detailed report in full, embracing every item of business done by or through him up to and including the day of making said report; remitting in full all moneys or notes which have been collected. All premium notes and renewal receipts past due and unpaid at date of making said report must be returned therewith; also all policies on hand and not delivered within thirty days from their respective dates must be returned to said party of the first part, said party of the second part charging himself with the expense of the medical examiner's fees on all policies so returned, which have been issued on the plan applied for. Said report shall show a list of all policies remaining on hand at date of said report and why they are retained. It is expressly stipulated and agreed between the parties hereto that in case the said party of the second part shall neglect to remit said funds in full, or hold any policies, receipts or notes belonging to said company which should have been reported upon and transmitted to the said party of the first part, or if said party of the second part shall fail to remit said funds, or withhold any policies, receipts or notes after they shall have

been demanded from him by said party of first part, then in such case all claims whatsoever accrued or to accrue under this agreement to said party of the second part shall be forfeited to said party of the first part unconditionally.

Fourth. All books of account, documents and papers connected with the business shall be the property of said company, and at all times open to inspection of said party of the first part, the officers of said company, or their duly authorized representative.

The compensation for said services is to be a commission upon the premiums of the insurance effected with said company by or through the procurement of said party of the second part, and such commission shall be paid to him by said party of the first part according to the following:

TABLE OF RATES OF COMMISSION.

| Kinds of Policies. | Per cent. on the First Year's Premium on Participating Policies. | Renewal. | Per cent. on the First Year's Premium on Non-Participating Policies. | Renewal. |
|---|---|---|---|---|
| All regular Life and Life Rate Endowment Policies...... | 50 | 5% | 40 | 5% |
| All Regular Life and Life Rate Endowment Policies with 20 Annual Payments...... | 50 | 5% | 40 | 5% |
| All Regular Life and Life Rate Endowment Policies with 15 Annual Payments...... | 45 | 5% | 35 | 5% |
| All Regular Life and Life Rate Endowment Policies with 10 Annual Payments...... | 40 | 5% | 30 | 5% |
| Straight Endowment Policies with 20 or more Annual Payments ...... | 40 | 5% | 35 | 5% |
| Straight Endowment Policies with 15 Annual Payments... | 35 | 5% | 30 | 5% |
| Straight Endowment Policies with 10 Annual Payments... | 25 | 5% | 20 | 5% |
| Life Annuity Policies, 20 Annual Payments...... | ... | ... | 40 | 5% |
| Life Annuity Policies, 10 Annual Payments...... | ... | ... | 30 | 5% |
| Return Premium Settlement Policies, 20 Annual Payments | ... | ... | 40 | 5% |
| .................................................... | ... | ... | ... | ... |
| Term Policies ...... | ... | ... | 25 | 5% |
| Pure Endowments and Children's Endowments...... | ... | ... | 25 | 5% |
| Annuities ...... | ... | ... | 03 | ... |
| Single Premium Policies, either Life or Endowment...... | ... | ... | 03 | ... |
| For Collecting Premiums upon business done by other Agents ...... | 1 P.C. | 1 P.C. | 1 P.C. | 1 P.C. |

Commissions shall accrue only as the premiums or premium notes are paid to said party of the first part in cash; and commissions on policies other than as above enumerated shall be fixed by the said party of the first part at the time of issue.

When notes are taken in payment for premiums, no commission shall accrue until such notes are paid in cash, and if notes are not paid when due they must be returned to said party of the first part, said party of the second part charging himself with the net term insurance for time policy was in force.

On business written prior to January 1, 1906, the said Wade Smith shall receive nine renewals of 2½ per cent., less the number of renewals he has already received. Only nine renewals will be paid on any business. Settlements must be taken on company's notes for premiums unless specifically agreed to otherwise by party of the first part. Renewals on any business can be held by party of the first part to cover any indebtedness of party of the second part to the company.

This contract is made and entered into with the understanding that the company reserves to itself the right to readjust the same to conform to any laws which have been passed, or which may be passed, affecting the compensation which life insurance companies may be permitted to pay their agents.

The expenses for medical examination, except as above provided, shall be paid by the said party of the first part. No other charges shall be allowed, except by special agreement.

All necessary stationery, blanks and circulars will be supplied by said party of the first part.

The authority of said party of the second part shall extend no further than herein stated; he shall not make, alter, or discharge any contracts, or waive forfeitures; he shall receive no further remuneration than as hereinbefore stated.

The said party of the second part agrees to furnish and maintain with the said party of the first part a sufficient and satisfactory bond in the sum of $500, waived temporarily.

In case said party of the second part fails to comply with any of the conditions, duties, and obligations under this agreement, or to conduct his business in a satisfactory manner, then the said party of the first part may at his option terminate this agreement. Otherwise it shall continue in force for nine years from date hereof. This agreement may be terminated by either party at any time by giving five days' notice.

The said party of the second part shall make no rebates, either directly or indirectly, and any violation of this clause will render this contract null and void.

In testimony whereof, the parties hereto have set their hands and seals, this 15th day of March, 1906.

This contract is executed in triplicate. All former contracts are hereby abrogated. E. D. Byers, Gen. Agt. (Seal.)   Wade Smth.   (Seal.)   Witness: R. D. Angelo.

The following is the first sheet of the items of account:

Sheet No. 1.

Mr. Wade Smith, in account with E. D. Byers, General Agent Union Central Life Insurance Company.

Items he should have credit for.

1907.

| | | |
|---|---|---|
| 8-14-07—Comm. Byrd, no credit given | $ 16 | 07 |
| 8-14-07—Comm. Willard, no credit given | 12 | 33 |
| 8-14-07—Net prm. Lawton, no credit given | 75 | 65 |
| | ——— $104 | 05 |
| Amount brought forward | $104 | 05 |

1908.

| | | |
|---|---|---|
| 3- 6-08—Error comm. Harrison 56% instead of 50%..................... | $ 3 18 | |
| 9-30-08—Error comm. Burnette.............................. | 0 40 | |
| 11-10-08—Error comm. Wingo............................... | 0 90 | |
| | | $ 4 48 |

1909.

| | | |
|---|---|---|
| 2- 5-09—Error comm. Finch................................ | $ 3 34 | |
| 5-31-09—Error comm. Wall No. 362995, only credited at $63.00........... | 10 00 | |
| 5-20-09—Net prm. Gosnell No. 364988, paid in cash..................... | 26 38 | |
| 6-14-09—Return Clark No. 365976, no credit given...................... | 112 08 | |
| 6-26-09—Error comm. DuPre.............................. | 1 56 | |
| 9-15-09—Net prm. Weber, no credit given.............................. | 21 40 | |
| 9- 1-09—Error comm. McDowell........................................ | 2 32 | |
| | | $177 08 |

1910 Acct.  See other sheet.
1911 Acct.  Byers won't give statement of.

1912.

| | | |
|---|---|---|
| 4- 2-12—2nd term Pruitt.................................... | $ 11 76 | |
| 4- 9-12—2nd term Bishop No. 376810 and 376811........................ | 4 92 | |
| 2- 9-12—Error comm. Morgan............................... | 9 50 | |
| 4-12-20—Error comm. McAbee, 2 policies................................ | 1 81 | |
| 4-20-12—Error comm. Murph, two term policies........................ | 7 70 | |
| 8- 5-12—Error comm. West No. 416821.................................. | 1 74 | |
| 12-28-12—Error comm. Howell.......................................... | 0 57 | |
| 9-20-12—Net prm. West, Howell, Moseley, Co. pd. this from renewals.. | 66 69 | |
| 9-20-12—Error comm. Davis, 50% instead of 45%........................ | 1 73 | |
| 10- 5-12—Error comm. Cox No. 419811 and 420671........................ | 14 65 | |
| | | $120 67 |

1913.

| | | |
|---|---|---|
| 1-23-13—Balance net prm. Reid, no credit given......................... | $ 76 00 | |
| 3-11-13—Net prm. Burnette, check given for this........................ | 16 32 | |
| 11- -12—Comm. Johnson note, no credit given............................ | 14 84 | |
| 4- 8-12—Error comm. Tinsley and Smith................................ | 8 69 | |
| 6-23-12—Error comm. Gosnell............................... | 1 36 | |
| 7-27-13—Net prm. Boyter.................................... | 13 64 | |
| 9-30-13—Net prm. Hammett, Co. paid this from renewals............... | 42 84 | |
| 7-31-13—Net prm. Powell, Co. paid this from renewals.................. | 19 84 | |
| 8- 8-13—Waters deposit in bank, no credit given......................... | 90 00 | |
| 10- 7-13—Net prm. Foster, paid by com. from renewals.................. | 28 67 | |
| 9- 9-13—Net prm. Brown.................................... | 16 77 | |
| 10- 7-13—Net prm. Lee, com. paid for this from renewals................ | 18 56 | |
| 8-25-13—Net prm. Caldwell, com. paid for this from renewals.......... | 51 20 | |
| 8-25-13—Net prm. Lipscomb................................ | 21 00 | |
| 8-25-13—Net prm. Mabry, com. paid this from renewals................. | 17 75 | |
| 1913—Comm. Morgan written by Howard Chapman.................... | 9 73 | |
| | | 477 21 |

Grand total all years 1907, 1908, 1909, 1912 and 1913.....................$853 49

Mr. Smith wishes credit given for the difference between Term Ins. and net prm. paid Company on 1-25-07 Waddell policy.

Mr. Smith wishes an explanation on the following:

| | | |
|---|---|---|
| 6-11-13—What policies does this cover.................................... | $ 32 00 | |
| 6-17-13—Term on Hammett............................................. | 8 08 | |

*Messrs. Bomar & Osborne* submit: *His Honor was in error in construing the decision in the case of Smith v. Bryce, 17 S. C. 542, and holding it to be conclusive of this case— there is a wide difference between that case and the case at bar. There will be hundreds of separate and distinct items between these parties that will have to be investigated in order to reach a final conclusion. It is hopeless to expect to do this before a jury, and the case presented before the presiding Judge a cause in equity for an accounting, and not merely an action "for the recovery of money only."* 75 S. C. 105; 108 S. C. 211; 1 R. C. L., p. 222; 10th R. C. L., p. 335.

*Mr. John Gary Evans,* for respondent (oral argument).

July 15, 1919.

The opinion of the Court was delivered by MR. JUSTICE GARY.

This is an appeal from the ruling of his Honor, the presiding Judge, that the plaintiff is entitled to a trial by jury.

The allegations of the complaint, material to the question involved, are as follows:

"That on or about the 15th day of March, 1906, the plaintiff entered into a contract with E. D. Byers, general agent of Union Central Life Insurance Company, by the terms of which contract, among other things, the plaintiff was to solicit and write insurance for the Union Central Life Insurance Company, for a period of nine years, and as part compensation for plaintiff's services he was to receive a certain per cent. of the first year's premiums on all policies written by plaintiff, and as a further compensation, plaintiff was to receive a certain per cent. of renewal premiums on the policies for a period of nine years, to wit, nine renewals on each policy. The rate of commission which plaintiff was to receive and the time for which he was to receive the renewals are more fully set forth in the contract.

"That the plaintiff entered upon his duties as agent of the defendant company, and wrote a large number of policies, of which policies a large number are now in force, but the defendant company has failed and refused to account to the plaintiff for the commissions and for renewals due plaintiff under the terms of the contract heretofore referred to and made a part of this complaint, and defendant company has failed and refused to give plaintiff proper credit for large sums of money turned over to defendant by plaintiff."

The prayer of the complaint is for judgment in the sum of $4,639.39.

In order to understand fully the nature of the account, it will be necessary to refer to the contract, which will be reported in full.

The defendant demanded an itemized statement of the account, whereupon the plaintiff's attorneys served several typewritten sheets of paper, embracing, in all, about 134 separate items, involving transactions in relation to various insurance policies issued upon the lives of numerous persons. As an illustration of the general character of the account, it will only be necessary to refer to sheet No. 1, which will be reported.

The reasons assigned by his Honor, the presiding Judge, are thus stated in his order:

"This matter comes before me upon a motion made by the defendant: First, to transfer this case from calendar No. 1 to calendar No. 2 for trial and disposition on that calendar by the Court, or by reference; and, second, for an order referring it to the master. The motions are resisted on the part of the plaintiff upon the ground that this is an action for the recovery of money only, and is properly on calendar No. 1 for trial by a jury. The contention on the part of the

defendant is that the cause is not one for the recovery of money only, but that it is really and in effect an action for an accounting, and for the recovery of such amount as may be found due upon the accounting. * * * *My opinion, from the inspection of the pleadings and papers used before me at the hearing, and the statements of counsel as to what is involved, is that the case could best be tried by a referee, and that it is a difficult case for a jury to pass upon intelligently, on account of the large number of items in the disputed account. On this account I would refer the case, if I were not impelled to the conclusion, that the plaintiff is entitled* to a jury trial of the case, as a matter of right. * * * The Court has held that the length of such an account will not give the trial Judge authority to refer such a case. *Smith v. Bryce,* 17 S. C. 539. * * * I am, therefore, of the opinion, under the authorities, as I understand them, that the action is one for the recovery of money only, and that I cannot refer the case, without the consent of both parties; and, therefore, a jury trial must be had. Both motions are, therefore, overruled, *for the reason, as indicated, that I have no authority under the law to grant them, and not from the standpoint of the exercise of discretion, I have in the matter."*

There are two reasons why his Honor, the presiding Judge, erred in ruling that the plaintiff was entitled to a trial by jury: In the first place, the fact, as shown by the contract, that the plaintiff as agent was intrusted with the collections of money for the benefit of his principal created a fiduciary relation between them, and entitled either of them to invoke the equitable aid of the Court by way of an accounting. And, in the second place, the accounts are so complicated that a trial by jury would not afford adequate relief.

Our conclusions are sustained by the following authorities: *Kerr v. Steamboat Co.,* Cheves Eq. 189; *Devereux v. McCrady,* 46 S. C. 133, 24 S. E. 77; *Price v. Middleton,* 75 S. C. 105, 55 S. E. 156; *Trum v. Mikell,* 105 S. C. 230. 89 S. E. 645, and cases cited; *Rainwater v. Bank,* 108 S. C. 206, 93 S. E. 770; 4 Pom. Eq. Jur., sec. 1421, and note.

The case of *Devereux v. McCrady,* 46 S. C. 133, 24 S. E. 77, in which Mr. Chief Justice McIver, who wrote the opinion, in *Smith v. Bryce,* 17 S. C. 538, dissented, shows that the rule announced in the last mentioned case is not applicable.   In the case of *Devereux v. McCrady* the Court quoted with approval the following language of Mr. Pomeroy in his work on Equity Jurisprudence, vol. IV, p. 472. sec. 1421:

"The instances in which the legal remedies are held to be inadequate, and, therefore, a suit in equity for an accounting proper are: (1) Where there are mutual accounts between the plaintiff and the defendant, that is, where each of the two parties has received and paid on the account of the other; (2) where the accounts are all on one side, but there are circumstances of great complication, or difficulties, in the way of adequate relief at law; (3) where a fiduciary relation exists between the parties, and the duty rests upon the defendant to render an account."

The Court also quoted with approval the following language of Chancellor Harper, in *Kerr v. Steamboat Co.,* Cheves Eq., page 194:

"Though it may not be easy to define, by a general rule, the class of cases in which a bill will lie for an account, yet I think there can be no doubt with respect to the present one.   That an equitable jurisdiction exists, in case of complex and intricate accounts, between whatever parties,

though an action might be maintained at law, and though no recovery be needed, the authorities have settled beyond question. Such is the conclusion of Justice Story, whose work was cited in argument."

In connection with the language just quoted, we desire to call special attention to the words of his Honor, the presiding Judge, which we have italicized, to show that he refused the reference solely on the ground that he did not have the power to order it. The practical effect of sustaining the order refusing the reference is to hold that a reference cannot be ordered in any case involving an account, as it will be difficult to find a case in which the account is more complex, as well as involving a fiduciary relation.

The case of *Devereux v. McCrady,* 46 S. C. 133, 24 S. E. 77, is cited with approval in *Sigwald v. Bank,* 74 S. C. 473, 55 S. E. 109; *Price v. Middleton,* 75 S. C. 105, 55 S. E. 156, and *Construction Co. v. Manufacturing Co.,* 78 S. C. 169, 58 S. E. 765. In the case of *Price v. Middleton* the Court uses the following language, in construing the case of *Smith v. Bryce,* 17 S. C. 538:

"Equity, it is true, cannot take jurisdiction of an ordinary action at law on an ordinary account, merely because the trial will involve many items. *Smith v. Bryce,* 17 S. C. 538. But this cannot be regarded as ordinary action at law on an account, as, for instance, an action by a merchant, on a single account against his customer, for there the charges and credits may be readily established by simple proof of the books, or, at most, of the items by one or two persons, and the subtraction of one from the other establishes the balance. Here the rights of the parties can only be determined by an accounting of the entire export business, probably involving many transactions in foreign countries

and possibly requiring evidence from those countries; and even when the books are proved, and the correctness of the items established, intricate complications and statements will be requisite to ascertain the balance of profit for each year.   No argument is necessary to show that the performance of such a tax could not be expected from a jury, with the opportunity which an ordinary trial affords. *To require that it be attempted would not only make a just judgment extremely improbable, but would tend to bring trial by jury into disrepute."*   (Italics added.)

This language of Mr. Justice Woods shows clearly that his construction of the case of *Smith v. Bryce,* 17 S. C. 538, is very different from that annuounced by his Honor, the Circuit Judge, 106 S. C. 25, 90 S. E. 161.   See, also, *McCabe & Co. v. Colleton Co.,* 106 S. C. —, 90 S. E. 161.

The rule is thus stated in 1 Corpus Juris, 621, 622:

"Courts of equity have jurisdiction over all trusts, for the purpose of compelling an accounting; and the existence of any confidential or fiduciary relation is sufficient to invoke such jurisdiction, whenever the duty arising out of such relation rests upon one of the parties to render an account to the other.   This rule is not restricted merely to express trustees, but applies equally to trusts created by implication of law."

In 1 R. C. L., p. 222, it is said: "As Courts of equity now entertain concurrent jurisdiction with the Courts of law in matters of account, a decision as to the proper tribunal must, as a rule, be governed by considerations of convenience and adequacy; and this is determined by the facts pertaining to each individual cause of action and the relief sought."

And on page 223 of the same volume, we find the following: "That there are complicated accounts is ordinarily a

good reason for a Court of equity taking jurisdiction of. matters of accounting, although they are all on one side."

The principles announced in *Smith v. Bryce,* 17 S. C. 538, are in entire accord with the foregoing authorities, but the facts were very different from those in the case under consideration.

The principle announced in *Wilson v. York,* 43 S. C. 299, 21 S. E. 82, is in no respect whatever at variance with our conclusion in the present case.   In *Wilson v. York, supra,* a previous order had been made by a Circuit Judge that the plaintiff was entitled to a trial by jury; therefore a succeeding Circuit Judge did not have the power to change that order.   Furthermore, although the account in that case was lengthy, there was no complexity in it.

Reversed.

MESSRS. JUSTICES HYDRICK and FRASER concur.

MESSRS. JUSTICES WATTS and GAGE dissent.