### 15808

#### COLEMAN v. COLEMAN

(37 S. E. (2d), 305)

*Messrs. George W. Keels, G. Badger Baker* and *Mc-Eachin & Townsend,* all of Florence, Counsel for Appellant,

*Messrs W. Marshall Bridges,* of Florence, and *Samuel Want,* of Darlington, Counsel for Respondent,

March 3, 1946.

Mr. Acting Associate Justice Steve C. Griffith delivered the Opinion of the Court.

After a careful study of the well-considered order of his Honor, L. D. Lide, Circuit Judge, from which this appeal was taken, we are satisfied that it disposes of all questions correctly and it will be reported as the judgment of this Court.

In deference to the earnestness of appellant's counsel we will discuss further two of the questions stressed by them. Appellant takes the position, in effect, that the Court, in determining whether or not it had the power to grant a compulsory order of reference, should have considered the complaint alone, and not the other pleadings, consisting of appellant's answer and respondent's reply thereto. They also contend that the affidavits presented at the hearing should not have been considered. As will be seen from what is said hereafter, these contentions present two separate questions, and will be so considered.

It will be observed from the order of the Circuit Judge that mere mention was made of these contentions having been presented by appellant, and were overruled without discussion; and no doubt the learned Circuit Judge, who

has such a profound knowledge of our law and its history, deemed a discussion unnecessary.

In connection with appellant's contention that the complaint alone should have been considered in determining whether or not an order of reference should have been granted and that it was error to consider the other pleadings, he calls attention to the case of *Speizman v. Guill,* 202 S. C., 498, where the Court, in effect, held, that where a complaint states a case in equity, the interposition by the defendant in his answer of a legal defense, does not change the nature of the cause of action and that such legal defense may be disposed of according to equitable procedure; and hence under such circumstances a defendant is not entitled to a jury trial of his legal defense. On this premise, and without citing other authority, appellant argues that "the converse is necessarily true of a legal action in a court of law." That is to say, it is contended that the complaint in this case states purely a legal action in a court of law and even though the answer and reply raise equitable issues they grow out of the legal cause of action stated in the complaint and do not change the character of the action so as to deprive appellant of trial by jury, as a matter of right, on all issues.

To show that there is no merit in appellant's position, it will be helpful to refer to the early history of equity jurisprudence and the court of law when they were separate and distinct. Only brief reference need be made, as the historical principles to be mentioned are well known, and the overlooking of their applicability here, is the cause of the confusion.

In the development of equity jurisprudence it was permissible for a defendant to plead both legal and equitable defenses to bills in equity; and the Court of equity, under its flexible rules, adopted the principle, that when it assumed jurisdiction of a case, it would dispose of all issues, both legal and equitable, so as to prevent a multiplicity of suits and circuity of action, and there resulted the well-known

maxim "equity delights to do justice, and nót by halves." 30 C. J. S., 419.

These principles have been recognized and applied by this Court in numerous cases, including the comparatively recent cases of, *Mortgage Loan Company v. Townsend,* 156 S. C., 203; *Heyward v. Long,* 178 S. C., 351; *Morison v. Rawlinson,* 193 S. C., 25; *Holly Hill Lumber Company v. McCoy,* 203 S. C., 59. And *Speizman v. Guill, supra,* and the cases therein cited are based on those principles.

But the court of law had no such flexible practice. Under the common law an equitable defense could not be interposed to an action at law, and if the defendant had only an equitable defense, judgment was given against him as a matter of course. Upon the adoption of the Code, revolutionizing the old practice, it was provided that a defendant could interpose to an action at law, both legal and equitable defenses. It was then that our courts held that even though an equitable defense could be interposed to an action of law, nevertheleses, equitable defenses could not be submitted to a jury as a matter of right. This Court in *Adicks v. Lowry,* 12 S. C., 97, 108 had this to say with regard to the trial of an equitable defense interposed to an action at law: "Under the former practice such defense could not have been set up in the action at law to try the title and recover possession. The defendant would have been obliged to file his bill in equity to restrain proceedings at law, and to seek such other relief as in equity he might have a right to demand. Under the Code of procedure all this may be effected by the pleadings in a single action and new parties, if necessary, may be brought in; but, at the trial, the legal and equitable issues must be distinguished and decided by the court in the exercise of its distinct functions as a court of law and a court of equity, and only those should be determined by the jury which are properly triable by jury, while those which would formerly have been properly triable in equity must be determined by the judge in the exercise of his chancery power. In the latter class, when questions of fact are submit-

ted to the jury, the purpose can only be to enlighten the understanding of the judge by giving him the aid of a verdict, but the verdict is not binding, and may be totally disregarded· by the judge in arriving at his final determination."

In the case of *Holliday v. Hughes*, 54 S. C., 155, in an opinion by Chief Justice McIver, this court quoted with approval from the opinion in *Adicks v. Lowry, supra*, and held that the above-quoted principle therefrom had been followed in numerous cases and was the settled law of this state. And since then, the principle referred to has been consistently followed, and approved, in the following cases:

*Engine Co. v. Lodge, 73* S. C., 533;
*Jenkins v. Jenkins,* 83 S. C., 543;
*Godfrey v. Lumber Co.,* 88 S. C., 142;
*Southern Ry. v. Howell,* 89 S. C., 393;
*Mitchell v. Hamilton,* 98 S. C., 289;
*Parker v. Victoria Real Estate Co.,* 105 S. C., 383;
*Oliver v. McWhirter,* 109 S. C., 364.

So the Circuit Judge here, after deciding that equitable issues were presented by the pleadings, correctly referred to the Statute, Section 653 of the Code, as construed by this Court, in determining whether or not he should refer the case, and as to this, his order is plain enough.

And we think that it is equally plain that in determining what issues are presented in a case, it is necessary to consider all of the pleadings. *Sou. Ry. v. Howell,* 89 S. C., 393; *Rainwater v. Bank,* 108 S. C., 206; *Smith v. Union Central,* 112 S. C., 367.

And it should be noted in passing that the refusal of the Court to submit equitable issues to a jury, as in a law case, does not grow out of opposition to trial by jury, but from a feeling that a jury cannot possibly comprehend and grasp sufficiently the issues to render a correct verdict, and that to do so might result in bringing trial by jury into public disfavor. This Court in ·*Smith v. Union Central, supra,* quoted from an earlier case in which an accounting was in-

volved, in part, as follows: "No argument is necessary to show that the performance of such a task could not be expected from a jury, with the opportunity which an ordinary trial affords. *To require that it be attempted would not only be making a just judgment extremely improbable, but would tend to bring trial by jury into disrepute.*"

Coming to the contention that the circuit judge should not have considered the affidavits presented on the hearing of the motion to refer, the practice followed by the Circuit Judge has been established too long to be open to question now. At least as early as 1887, in the case of *Bouland v. Carpin,* 27 S. C., 235, Judge McIver speaking for the Court, of a motion to refer, said: "The Judge to whom the motion is submitted must determine whether the case is such as to warrant such a reference; and this he may determine, either from an inspection of the pleadings, or from affidavits submitted as to the nature of the case, and the necessity for a long account * * *." This language was quoted with approval in *Green v. McCarter,* 64 S. C., 290, and *Trump v. Mikell,* 105 S. C., 280, and finds support from high authority elsewhere. 53 C. J., 698.

No point was raised before the Circuit Judge or here, that the order of reference should have been limited to equitable issues only as was done in the case of *Chisolm v. Pryor,* 207 S. C., 54, and in the other cases therein cited, and we do not pass on this point.

However, it appears that the order below specifically reserves the right of the appellant, on the coming in of the Master's report, to demand as a matter of right a trial by jury of the legal issues, inasmuch as the order was issued without prejudice to such right.

Judgment affirmed.

MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OXNER concur. MR. CHIEF JUSTICE BAKER did not participate.

*Order of Judge Lide:*

This is a suit for the recovery of Sixty-eight Thousand, Seven Hundred and Forty ($68,740.00) Dollars, exclusive of interest and attorney's fees, which the plaintiff alleges in his complaint is the amount of loans made by him to the defendant. The defendant has answered, denying liability by reason of alleged offsets and payments and interposing two counterclaims. The matters before me are motions on the part of the plaintiff to require the defendant to make his answer more certain and definite, for an order for the examination of the defendant before trial, and for an order of reference.

The first cause of action stated in the complaint is upon a note for the principal sum of one Thousand ($1,000.00) Dollars. The second cause of action is upon another note in the principal sum of Four Thousand ($4,000.00) Dollars. The third cause of action is founded on the defendant's check to the order of the plaintiff for the sum of Eleven Thousand, Four Hundred and Thirty ($11,430.00) Dollars. The fourth cause of action is founded on the defendant's check to the order of the plaintiff for the sum of Fifty-two Thousand, Three Hundred and Ten ($52,310.00) Dollars. Each of these instruments is alleged by the plaintiff to represent a loan made by him to the defendant. The plaintiff alleges that no part of such loans has been repaid, and judgment is demanded for the principal sum of Sixty-eight Thousand, Seven Hundred and Forty ($68,740.00) Dollars, "together with interest as may be allowed by law, and with reasonable attorney's fees on the amounts evidenced by the two notes   *   *   *."

Thus, taking the complaint alone, the action is one at law, with no features of equitable cognizance that would support a motion for an order of reference.

The time for answering the complaint was extended by plaintiff's counsel. After the lapse of the statutory time to plead, but before the defendant answered, plaintiff's counsel docketed the case on Calendar No. 1 for trial by jury. Ac-

cordingly, in connection with the motion for an order of reference, the plaintiff further moves that the cause be stricken from Calendar No. 1.

The answer of the defendant admits the execution of the four instruments described in the complaint. As to the first two causes of action, the answer further alleges that the defendant denies that he is "due the plaintiff any sum upon the said note for the reason that the amount of the said note is offset by indebtedness of the plaintiff to the defendant hereinafter more fully described."

As to the third cause of action the defendant makes a similar denial as to any amount being due the plaintiff on the check therein described, "for the reason that the same is offset by indebtedness of the plaintiff to the defendant." As to the fourth cause of action the defendant admits that he borrowed from the plaintiff the sum of Fifty-two Thousand, Three Hundred and Ten ($52,310.00) Dollars, and as evidence of the same gave his check as alleged in the complaint; he however alleges "that he has paid thereon to the plaintiff the sum of Fifty-one Thousand, Three Hundred and Thirty-five ($51,335) Dollars, and that, by reason of the indebtedness due the defendant by the plaintiff hereinafter described, there is no balance due upon the loan set up in this cause of action."

It will thus be perceived that the defenses thus far stated constitute a denial by the defendant of any indebtedness to the plaintiff by reason of the "offsets" claimed by him and of the payment by him to the plaintiff of the sum of Fifty-one Thousand, Three Hundred and Thirty-five ($51,335-.00) Dollars.

The answer then proceeds to set up two further defenses "by way of set-off and counterclaim." In the first of these defenses the defendant alleges that he, with his brother and the plaintiff, entered into a partnership with the plaintiff in January, 1939, and that under the terms of the partnership agreement the defendant was to receive Fifteen (15%) per cent. of the net profits of the partnership. He alleges that

this partnership is still in existence and that his share of the profits thereof for the years 1939-1944, inclusive, is Fourteen Thousand, Two Hundred Seventy-seven and 94/100 ($14,277.94) Dollars; that an additional amount will be due the defendant by reason of profits made by the partnership during the year 1945. He estimates the amount of his share of the 1945 profits, as of the time of his answer, as a sum in excess of Twenty-eight Hundred ($2,800.00) Dollars. He further alleges that all of the aforementioned profits are in the hands of the plaintiff; that he left such profits with the plaintiff at the plaintiff's request, and upon the agreement of the plaintiff that he would pay such profits to the defendant any time he desired; that he has demanded payment by the plaintiff of such profits, and that such demand has not been complied with.

In the second of such defenses by way of set-off and counterclaim the defendant sets up an account against the plaintiff in the amount of Twenty-nine Hundred and Twelve ($2,912.00) Dollars, representing services performed and expenses incurred by him in assisting the plaintiff in dealing with the federal tax authorities in relation to a deficiency income tax assessment made against the plaintiff. He alleges that the plaintiff solicited his assistance, agreeing to pay him for all expenses incurred by him and a reasonable amount for the services performed by him. He attaches to his answer what purports to be an itemized statement of the disbursements made and the services performed by him. He further alleges that on several occasions he demanded payment of this account from the plaintiff and that the plaintiff has failed to make payment, but he does not allege that in connection with such demands he stated any account to the plaintiff. The language of his pleading is "that on several occasions (he) demanded payment from the plaintiff for his expenses, services and time in connection with his work on the said tax assessment."

In due time the plaintiff replied to the counterclaims of the defendant. In his amended reply the plaintiff denies the

existence of the partnership alleged by the defendant; he alleges that all of his business in which the defendant claims a partnership interest is strictly the plaintiff's personal business; that when consideration was given a few years ago to the question of reducing his income tax liability, the plaintiff conferred with the defendant and his other children on the subject and concluded to set up a partnership covering his principal operations, in which the defendant would acquire a fifteen (15%) per cent. interest; that however said partnership was never established; that the plaintiff had never made any gift of any partnership interest to the defendant and had never received any compensation from the defendant for such an interest; that in no aspect was the partnership ever consumated; that the defendant is a son of the plaintiff, and that prior to the disputes which brought about the present action, he had the unlimited confidence of the plaintiff, and that whatever records may be in existence relating to the alleged partnership are records made by the defendant. It is then alleged that if as the result of an investigation of all of the facts relating to the alleged partnership, it should be adjudicated that the defendant has the status of a partner and is entitled to fifteen (15%) per cent. of the partnership profits, the defendant should be called upon to pay the plaintiff the value of a corresponding interest in the partnership assets, this sum being greatly in excess of the amount of alleged partnership profits claimed by the defendant. And the amended reply concludes on this subject with the allegation that the plaintiff is without adequate information on the subject, because of his complete reliance upon the defendant in the past in the handling of the plaintiff's affairs and records.

In connection with the defendant's purpose, as disclosed by his defense to the fourth cause of action, to rely upon remittances made by him to the plaintiff, the amended reply sets forth that the defendant has accumulated large amounts of money and property, and has established various businesses out of funds provided by the plaintiff and funds ob-

tained by the defendant by withdrawals from the plaintiff's business; that in addition to such sums the defendant frequently called upon the plaintiff for large sums of money needed by the former in the operation of his business; that these sums aggregate some hundreds of thousands of dollars, "a considerable part of which was returned by the defendant to the plaintiff, without interest in most instances," the implication being that the remittances upon which the plaintiff believes the defendant will rely to establish his allegation of payment will be remittances involved in the repayment of the hundreds of thousands of dollars of loans above referred to.

The amended reply further alleges that until recently the defendant lived in the home of the plaintiff, contributing nothing to the maintenance thereof and paying no board; "that in these and other ways the relationship of the plaintiff and the defendant as father and son was evidenced, and that until the recent repudiation by the defendant to the plaintiff of the liabilities set forth in the complaint, the plaintiff had no reason to doubt the integrity or purposes of the defendant, or to believe that the defendant made any claim to the earnings of the plaintiff's business and personal investments. The amended reply further alleges that the records of the defendant's transactions with the plaintiff were in large part made by or under the direction of the defendant, and that the defendant appears to have complete and detailed accounts thereof; that on the other hand the plaintiff's confidence in his belief that the defendant as his son assisted the plaintiff as would be expected of a grateful and prosperous son, took no steps to make appropriate records to protect his own interests against the defendant.

With reference to the counterclaim based on the services and expenses of the defendant, the amended reply denies the making of any such agreement as alleged by the defendant; sets forth that competent lawyers and accountants were in charge of the handling of the tax matter; and that it was the plaintiff's understanding that the defendant was assisting the

plaintiff and his lawyers and accountants because of the relationship of the parties and his knowledge of the actual facts. Reference also is made to many of the other matters herein referred to as indicating the plaintiff's understanding and belief that the defendant had no intention of making any charge for his services or disbursements.

It is further alleged in the amended reply that the defendant has in his possession the records upon which the plaintiff would have to rely in presenting his reply to the defendant's counterclaims.

At the hearing before me and subsequent thereto both parties have filed affidavits dealing with the matters set forth in the pleadings. On the part of the plaintiff these affidavits relate principally to the denial of the existence of the partnership, to the handling of the plaintiff's business and records by the defendant on the basis of the relationship of father and son and the confidence of the former in the latter, and to the trust relationship between the parties both by reason of their status as father and son and by reason of the confidence placed by the plaintiff in the defendant in the handling of the former's records, money and property.

In one of the affidavits of the defendant it is alleged that the payment of Fifty-one Thousand, Three Hundred and Thirty-five ($51,335.00) Dollars alleged by the defendant in his defense to the fourth cause of action have been paid by the defendant to the plaintiff consisted of the delivery by the defendant to the plaintiff of a certain certificate of deposit for Twenty-Six Thousand, Three Hundred and Thirty-five Dollars ($26,335.00) and the payment by the defendant to the plaintiff of the sum of Twenty-five Thousand ($25,000.00) Dollars in cash. In a counter-affidavit the plaintiff alleges that the certificate of deposit in question was one payable to bearer, founded on a deposit of the plaintiff's funds made by the plaintiff himself, and that the defendant had no interest in or connection with the same. The alleged cash payment is denied.

It is the position of the defendant that the character of the cause of action, as legal or equitable, and as to the propriety of the granting of an order of reference in any aspect of the case, is fixed by the complaint as an action at law, and that the subsequent pleadings and affidavits do not alter the character of the action.

The position of the plaintiff is that he is entitled to an order of reference notwithstanding the correct characterization of the cause of action set forth in the complaint as one at law; that the determination of the right of a litigant to an order of reference, and indeed the characterization of the whole action as legal or equitable, is made upon all of the pleadings and other papers before the court, and upon the application to all of such pleadings of the statute governing the granting of orders of reference and the decisions of our Supreme Court construing and applying the same.

Viewing the matter in this light the plaintiff contends that the pleadings and affidavits before the court, though involving disputes between the parties on every material matter, disclose elements of a character cognizable in equity, and requiring the granting of an order of reference whether or not the ultimate disposition of the case is to be made by the court alone, sitting as a chancery court, or by the submission of issues to a jury as may be determined at a later stage of the case.

On the question of the plaintiff's right to an order of reference, the controlling considerations are as follows:

The relationship between the plaintiff and the defendant is a fiduciary one in at least two legal aspects. First of all, the plaintiff is over seventy years old. The defendant is his son, in whom he placed unlimited confidence in the handling of his records and money.

Secondly, the defense set up by the defendant in itself savors of an action of an equitable nature, for a partnership accounting. The existence of the partnership is denied by the plaintiff, but if the defendant's claims are well founded, the relationship between the plaintiff and the de-

fendant is not only of a fiduciary character in the sense here-inabove indicated, but also in the further sense that the parties were dealing with each other as partners, one trusting the other implicitly in the handling and maintenance of records. The disputes between the parties involve the existence of a partnership, and if the partnership is adjudicated to exist, the amount of the profits that have been made by it and to which the defendant is entitled to the extent of fifteen (15%) per cent. But the outstanding fact in this connection is that the controversy between the parties is alleged by the defendant himself to be a partnership controversy, involving the respective rights and interests of the plaintiff and the defendant in the businesses and assets alleged to constitute the partnership. And the equitable character of the controversy is indelibly stamped upon it by the necessary accounting involved in dealing with the counterclaims of the defendant.

There is a third aspect of the case affecting the plaintiff's right to an order of reference. The dealings between the plaintiff and the defendant admittedly have involved the handling by the defendant of hundreds of thousands of dollars of the plaintiff's funds. While the defendant states in one of his affidavits that the transactions between him and his father largely involved the handling of cash, as to which no records were made by the defendant this is denied by the plaintiff who contends that the defendant has ample records of these transactions. The particularity with which the defendant seems able to set up the precise amount of partnership profits claimed by him and the many items of expenditures on his part over a period of nearly three years in connection with his services in the tax controversy strongly suggests that there ought to be in existence records of equally or more important transactions between the plaintiff and the defendant in which the latter obtained large sums of money from the plaintiff and which he admittedly repaid. In this connection it is readily seen that the controversy between these parties involves a long and intricate accounting,

and that one of the purposes of such accounting as far as the plaintiff is concerned will be his attempt to assign to other transactions the payments which the defendant alleges he made to the plaintiff on account of the matters set forth in the complaint.

As shown in the cases cited *infra* the facts which determine the right of the plaintiff to an order of reference are not limited to those which are set forth in the complaint. It frequently has been the case, where the present issues have been presented to our Supreme Court, that the complaint stated an ordinary cause of action at law, with no features of equitable cognizance, and that the Supreme Court assembled the facts from the subsequent pleadings of both the plaintiff and the defendant and from the affidavits and other supporting papers submitted as a part of the plaintiff's motion and of the defendant's return thereto. See the cases cited *infra*.

The classes of cases in which an order of reference may be granted are set forth in Section 653 of the Code. This statute provides:

"Where the parties do not consent, the court may, upon application of either, or its own motion, direct a reference in the following cases:

"(1) In all equitable actions and of equitable issues in actions at law. The order may be general of all issues of both law and fact, or may be so limited as the court may direct; provided, that this section shall not be construed so as to deprive any party of a trial by jury of any case or issue upon which he is entitled to a trial by jury as a matter of right under the present practice.

"(2) Where the taking of an account shall be necessary for the information of the court, before judgment, or for carrying a judgment or order into effect; or

"(3) Where a question of fact, other than upon the pleadings, shall arise, upon motion or otherwise, in any stage of the action."

Our Supreme Court had occasion quite recently to apply this statute to a case of the present character. In *Jefferies v. Harvey*, 206 S. C., 245, 33 S. E. (2d), 513, the complaint set forth a cause of action on a number of promissory notes alleged to have been executed by the defendant and delivered by him to the plaintiff to evidence certain loans. The complaint thus stated a cause of action at law for the recovery of a stated sum of money without any accounting features or any other elements of equitable cognizance. The notes covered transactions which extended over a period of two years. The total amount of the notes was Three Thousand, Six Hundred and Sixty-five ($3,665.00) Dollars. As stated by the Court in its opinion, the several defenses presented "the issues of payment, breach of trust, fraud, deceit and usury." These defenses were stated to arise out of defensive matter stated by the Court as follows:

"It appears that the defendant, Poole Harvey, was county auditor of Cherokee County. He alleges that he borrowed various sums of money from the plaintiff, over a period of years, executed notes therefor, and in order to secure them assigned and delivered numerous salary vouchers, state and county, to the plaintiff; that these salary vouchers were given to the plaintiff upon his agreement to collect them and apply the proceeds to the payment of the notes. The allegation is made that the plaintiff was entrusted with the collection of the salary vouchers, but that he breached his trust by failing to give the defendant, Harvey, any credit therefor, or to furnish him with any statement of the moneys collected. It is further alleged that the plaintiff has collected from his salary vouchers more than enough to pay the amounts due on the various notes, but that in violation of his trust he has refused and neglected to apply these collections as credits on the notes secured by the vouchers, or make any accounting therefor."

After the joinder of issue, the plaintiff moved for an order of reference, basing such motion upon the pleadings and

upon affidavits. The order was granted by the lower court. As stated by the Supreme Court:

"The order was rested upon the ground that the pleadings and other papers exhibited to the court showed that a trial of the issues would involve 'an accounting so long and intricate as that it would be impracticable to try the case before a jury; that the said accounting would be so complicated and intricate that an ordinary jury could not comprehend and decide the issues correctly, and supplies the essential feature of equitable cognizance justifying me, in my discretion, to order a compulsory reference'."

In addition to the pleadings and affidavits, the court had before it notices served by the defendant's attorneys requiring the plaintiff to produce twenty-seven checks of various dates, together with a number of letters received by the plaintiff in connection with the matters in issue. In another notice the plaintiff was required to produce certain agreements relating to the collection of the salary vouchers and also all deposit tickets, bank statements, and correspondence between a designated bank and the plaintiff relating to the collection of the salary vouchers in question.

The Supreme Court said:

"Prior to the passage of the 1928 Act (35 St. at Large, Page 1149), it had been consistently held by this Court that under Section 593, Code of Civil Procedure, 1922, a compulsory order of reference to try the issues of both law and fact may be made only in cases within the equitable cognizance of the Court, and then only under the circumstances detailed in Section 593 of the Code, where the trial of an issue of fact shall require the examination of a long account. *Peeples v. Hornik,* 153 S. C., 321, 150 S. E., 802; *Georgian Co. v. Britton,* 141 S. C., 136, 139 S. E., 217; *Peoples Bank v. Helms,* 140 S. C., 107, 138 S. E., 622.

"By that Act the 1922 Code section was amended by providing, in part:

(Here Section 653 of the 1942 Code is quoted in part.)

"As we stated in *Peeples v. Hornik,* 153 S. C., 321, 150 S. E., 802.

" 'The effect of the amendment is to confer the power of compulsory reference in all equitable matters, regardless of whether an issue of fact therein may require the examination of a long account or not, and of equitable issues in actions at law.'

"It is elementary that equity has jurisdiction of actions in which long and complicated accounts are involved, on the ground that the remedy at law in such cases is not adequate. Some of the reasons are, that the circumstances ordinarily incident to jury trials make it impracticable for the jury to properly examine such accounts and make the computations and adjustments necessary to ascertain the truth and do justice between the parties. The rule, therefore, is that to deprive a party of the right of jury trial, the account involved must not only be long, but so complicated that it would not be practicable for an ordinary jury to comprehend and adjust the issues correctly. *McCabe Co. v. Colleton Mercantile & Mfg. Co.,* 106 S. C., 25, 90 S. E., 161; *Sumter Hardwood Co. v. Fitchette,* 133 S. C., 149, 130 S. E., 881; *Smith v. Union Cent. Life Ins. Co.,* 112 S. C., 356, 99 S. E., 830. The test seems to be whether the account is so long that the jury cannot keep the items and calculations clearly in their minds and give each item its proper weight and application. *Moody v. Dudley Lumber Co.,* 136 S. C., 327, 134 S. E., 369.

"We are of the opinion that the motion for a compulsory reference was fully supported by the essential elements for the exercise of the Court's discretion, in that the pleadings and the accompanying affidavits and papers submitted to the Court, show the necessity for the examination of an account so long and intricate that a trial by jury would be impracticable.

"In addition to this, the order was properly granted because the defendants by their answers raised equitable issues in an action at law, and these issues include, among

others, breach of trust, which involves a fiduciary relationship. And while the defendants did not specifically pray for an accounting, this was implicit in the allegations of their answers.

"The rights of the parties can be determined only by an accounting of numerous transactions involving long, tedious and complicated calculations which no ordinary jury could be expected to adequately comprehend.

"This case is analogous to the case of *Farmers' & Merchants' National Bank v. Foster*, 132 S. C., 410, 129 S. E., 629, and *Smith v. Union Central Life Ins. Co.*, 112 S. C., 356, 99 S. E., 830, and is governed by the principles therein announced, which are in harmony with our holding herein. In both of these cases the court held that the issues involved a fiduciary relationship and necessitated the examination of a long and complicated accounting which authorized the granting of a compulsory order of reference."

In the several cases quoted in the opinion in the *Jefferies case, supra,* there are other illustrations of the application of the rule now settled in this state, that a compulsory order of reference should be granted not only in all equitable cases, but also in actions at law where equitable issues are involved; and that equitable issues are involved within this rule wherever the trial of the action will involve a complicated, intricate and long accounting that it would be impracticable for a jury to properly examine and adjust, or where it would be impracticable for a jury to make the necessary computations and adjustments necessary to ascertain the truth and to do justice between the parties. And the rule is given especial emphasis in cases where the relationship between the litigants is of a fiduciary character or involves an alleged breach of trust.

If in the *Jefferies case* the relationship of the litigants can be described as of a fiduciary character, certainly the same is true of the litigants in the present case, and as in the *Jefferies case,* the defendant himself may be said here to have invited a partnership accounting, which is a matter of equi-

table cognizance, by allegations of his answer setting up a partnership relationship and a claim for alleged profits extending over a period of years during which, according to the defendant, no records of partnership earnings were kept except as disclosed by the tax returns of the plaintiff and the defendant. The plaintiff claims that these returns were made by the defendant, and this the defendant does not deny. And likewise, the character of the accounting that will be involved in the present case to fix the respective obligations of the plaintiff and the defendant in the light of the admittedly large and numerous transactions between them will have far more of the characteristics described in the rule stated in the *Jefferies case* than was the accounting necessary under the facts of that case.

In the case of *Smith v. Union Central Life Insurance Co.,* 112 S. C., 356, 99 S. E., 830, the Court quotes with approval the following from 3 Pom. on Eq. Jur., p. 472:

" 'The instances in which the legal remedies are held to be inadequate, and therefore a suit in equity for an accounting proper are: (1) where there are mutual accounts between the plaintiff and the defendant, that is, where each of the two parties has received and paid on the account of the other; (2) where the accounts are all on one side, but there are circumstances of great complication, or difficulties, in the way of adequate relief at law; (3) where a fiduciary relation exists between the parties, and the duty rests upon the defendant to render an account.' "

In the *Smith case* a motion for an order of reference had been denied by the circuit judge. In reversing this ruling the Supreme Court said:

"There are two reasons why his honor, the presiding judge, erred in ruling that the plaintiff was entitled to a trial by jury: In the first place the fact, as shown by the contract, that the plaintiff as agent was intrusted with the collections of money for the benefit of his principal created a fiduciary relation between them, and entitled either of them to invoke the equitable aid of the court by way of an accounting. And,

in the second place, the accounts are so complicated that a trial by jury would not afford adequate relief."

The leading cases in South Carolina dealing with the present issue are cited and reviewed in the *Jefferies* and *Smith cases*. A study of such cases removes from my mind all doubt that the relationship between the present litigants and the character and extent of the dealings between them which culminated in the present controversy require that for an orderly trial of the cause an order of reference should be granted.

It is unnecessary for me to rule on the motion of the plaintiff that the answer of the defendant be made more certain and definite in stated particulars. Defendant's counsel conceded that the plaintiff is entitled to the information demanded in the motion, and has furnished such information. This motion therefore may be taken to be withdrawn.

While the granting of the motion for an order of reference does not exclude consideration of the plaintiff's motion for an order requiring the defendant to submit to examination before trial (*Peoples Bank v. Helms,* 140 S. C., 107, 138 S. E., 622) I see no need to grant such motion in the present case. The liberality of the practice before masters will enable the plaintiff to obtain during the course of the reference any information which he may properly require to be furnished him to enable him to present his case. That motion is therefore refused.

It is, therefore, ordered, adjudged and decreed: That this cause be and the same hereby is referred to C. W. Muldrow, Esq. Master for Florence County, to take the testimony of the parties in respect to all of the matters in issue between them under the pleadings in this cause and that he report the same to the court with his conclusions of law and fact thereon, but without prejudice to the right of the defendant to move before the court, after the coming in of the master's report, if he be so advised, for an order submitting any of the issues in the cause for trial by jury.

Further ordered, adjudged and decreed: That, subject to the foregoing, the cause shall be stricken from Calendar No. 1.